# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT E. ALLEN,** *et al.***,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 15-0969 (ESH)** |
| **JERRY BROWN,** *et al.***,** | |
| **Defendants.** | |

Plaintiffs are twenty-four current or former police officers employed by the Department of Veterans' Affairs ("VA") at the VA Medical Center in Washington, D.C.[1] who object to the secret installation of audio and video surveillance devices at their place of employment. Claiming violations of federal and District of Columbia law, they filed suit against Jerry Brown, the Chief of the VA Police Service; Brian Hawkins, the Medical Director at the VA Medical Center; Johnson Controls, Inc. ("JCI"), an outside contractor; and Robert A. McDonald, in his official capacity as former Secretary of the VA. Before the Court is defendants' motion to dismiss or, in the alternative, for summary judgment. (*See* Defs.' Mot. to Dismiss or, In the Alternative, for Summary Judgment, Sept. 30, 2015 [ECF No. 16] ("Defs.' Mot.").) For the reasons stated herein, defendants' motion will be granted in part and denied in part.

---

[1] Plaintiffs are: Robert Allen, Luis A. Rodriguez-Soto, Steven Smallwood, Anthony T. Green, Tywan Singleton, Ronald Wilson, William Nesbitt, Corey Powell, Walter Pittman, Gary E. Poindexter, Joshua J. Starleper, Thomas Rego, Cynthia Warren, Tommie R. Boozer, Thomas Dixon, Walter C. Bryan, Tyrone F. Tucker, Gary R. Smallwood, Kevin Lee Price, Gaylen Hawkins, Marlon Holder, Ricardo Wilkins, Myron Jeter, and Denise Glenn Gentry. (Compl. ¶¶ 1-24.)

## BACKGROUND

### I.    FACTS

According to the facts as set forth in the complaint,[2] in October 2013, Chief Brown, who is stationed at the VA Medical Center, arranged for the secret installation of surveillance devices in at least three "private areas" of the VA Medical Center.  (Compl. ¶ 33.)  Chief Brown obtained the consent of Director Hawkins, but did not follow the VA Handbook's guidelines for audio surveillance.  (*See* Compl. ¶¶ 49-53 (quoting VA Handbook §§ 6(b)(1)-(3)[3]).)

In November 2013 or thereafter, JCI, at Chief Brown's request, secretly installed audio and video recording devices in at least three locations within the VA Medical Center: the Police Control Operations Office ("Control Office"), the Police Report Writing Room ("Report Room"), and the Watch Commander's Office.  (Compl. ¶¶ 34, 36.)  The audio and video feeds from each of these devices were delivered on a real-time basis to Chief Brown's office where they were also recorded.  (Compl. ¶ 48.)

On January 24, 2014, several VA police officers found "a camera with a microphone covertly mounted on a support bracket for the CCTV monitors with a microphone hidden behind the monitors" in the Control Room.  (Compl. ¶ 39.)  The LED lights on the device were lit, but covered with black electrical tape.  (Compl. ¶ 39.)  One of the officers "covered the microphone portion of the camera while the officers present discussed what to do about the camera and

---

[2] As is apparent in the analysis section *infra*, many of these facts are contested by defendants.

[3] According to the complaint, section 6(b)(1) of the VA Handbook provides that "[t]he use of body microphones and recording devices are authorized for investigative purposes only. This use must be authorized by the Deputy Assistant Secretary for Security and Law Enforcement." Section 6(b)(2) provides: "Use of any device to overhear or record conversations without the participants' consent must be accomplished in accordance with the U.S. Attorney General's guidelines on communication interception by Federal law enforcement personnel." And section 6(b)(3) provides: "[t]he use of recording devices is not authorized for the routine taping of conversations during patrol and other duty activities."

microphone." (Compl. ¶ 39.)  In the midst of this discussion and immediately after the microphone was covered up, Chief Brown entered the room, demanded to know what the officers were doing, and "ordered all attending officers to draft statements regarding what was happening in the [C]ontrol [R]oom." (Compl. ¶¶ 40-41.)

Two months later, in March 2014, another hidden camera with an attached microphone was found in the Report Room, a room using by officers to write reports and as an alternate break room. (Compl. ¶¶ 42-43.)  On March 22, 2014, Chief Brown used the recordings from this device to administer discipline against Officer Luis A. Rodriguez-Soto (a named plaintiff), which included a two-week suspension without pay. (Compl. ¶ 44.)

Then, in January 2015, a hidden camera with an attached microphone was found in the Watch Commander's Office, a room that is used on occasion as a changing room for both male and female officers. (Compl. ¶¶ 45-46.)

As far as plaintiffs are aware, all three devices remain in use. (Compl. ¶ 47.)  In addition, plaintiffs suspect that there were additional recording devices secretly installed in the VA Medical Center. (Compl. ¶ 61.)

## II.    PROCEDURAL HISTORY

On June 22, 2015, plaintiffs, on their own behalf and on behalf of all others similarly situated,[4] filed the above-captioned case, alleging that the secret surveillance devices installed at the VA Medical Center violate federal and state law and seeking injunctive relief and damages.

---

[4] The "putative class" consists of

> All employees of the Department of Veterans Affairs Medical Center located at 50 Irving Street NW, Washington D.C. 20422 whose conversations or activities were recorded without their knowledge or permission from the dates of May 29, 2013 to the conclusion of this litigation.

(Compl. ¶ 25.)

The specific claims in the complaint are that: (1) Chief Brown, Director Hawkins and JCI's actions violated federal and state wiretapping statutes (Counts I and II) and constituted an unlawful civil conspiracy (Count III); (2) Chief Brown's actions violated plaintiffs' Fourth Amendment right not to be subjected to unreasonable searches and seizures (Count IV); and (3) Secretary McDonald is liable under the Federal Tort Claims Act ("FTCA") for Chief Brown's tortious acts and omissions (Count V).[5]  (Compl. ¶¶ 75-98.)

Plaintiffs subsequently voluntarily dismissed with prejudice all of their claims against JCI.  (*See* Notice of Voluntary Dismissal with Prejudice, Sept. 28, 2015 [ECF No. 15].)  The remaining claims against Chief Brown, Director Hawkins and Secretary McDonald are the subject of defendants' pending dispositive motion.

Defendants seek dismissal or summary judgment as to all of plaintiffs' claims.  No discovery has taken place, but defendants' motion for summary judgment is supported by extensive declarations from Chief Brown and Frank Giorno, the VA's Regional Counsel for the District of Columbia, along with excerpts of sworn testimony from Chief Brown, Director Hawkins, Deputy Chief of Police Cleveland Walls, and Officer Rodriguez-Soto, all of which were taken in April 2014 in the VA Medical Center's Administrative Investigation Board's

---

[5] For Count I, plaintiffs "seek statutory damages from Defendants jointly and severally amounting to the greater of $100 per day for each employee recorded or $10,000.00 for each employee, attorneys' fees, and the costs of this action."  (Compl. at 16.)  For Count II, plaintiffs "seek statutory damages from Defendants jointly and severally amounting to the greater of $100 per day for each employee recorded or $1,000.00 for each employee, punitive damages, attorneys' fees, and the costs of this action."  (Compl. at 17.)  For Count III, plaintiffs "seek damages as indicated in Counts One and Two against each Defendant jointly and severally."  (Compl. at 18.)  For Count IV, plaintiffs seek "all damages available including money damages, attorneys' fees, and costs."  (Compl. at 19.)  For Count V, plaintiffs seek a declaration that defendants' conduct was unlawful, compensatory and punitive damages, attorneys' fees, and an order for the "expungement of all employee records wherein any employee of the Department of Veterans Affairs Medical Center was disciplined as a result of the hidden cameras and microphones."  (Compl. at 19-20.)

inquiry into a hostile work environment claim brought by plaintiffs against Chief Brown.

Plaintiffs filed an opposition to defendants' motion that is supported by declarations from ten of

the named plaintiffs, along with a Rule 56(d) declaration from counsel[6] that asks the Court to

deny defendants' motion for summary judgment pending the completion of discovery.  (*See* Pls.'

Opp'n to Defs.' Mot., Dec. 4, 2015 [ECF No. 20].)  Defendants filed a reply, submitting

additional testimony from the Board investigation from several of the plaintiff officers, the VA

Associate Director Bryan Matthews, and a JCI employee, Mark Bradford, along with a

declaration from defendants' counsel, Mark Nebeker.  (*See* Defs.' Reply, Feb. 8, 2016 [ECF No.

24.)  Plaintiffs sought leave to file a surreply to respond to the Nebeker Declaration (*see* Pls.'

Mot. to File Limited Surreply, Feb. 29, 2016 [ECF No. 27]), and defendants filed a response to

the motion which included their response to the surreply (*see* Defs.' Resp. to Pls.' Motion to File

Limited Surreply, Mar. 1, 2016 [ECF No 28]).  The Court will grant plaintiffs' motion and

consider both plaintiffs' surreply and defendants' response in ruling on defendants' dispositive

motion.

## ANALYSIS

### I.      WIRETAPPING STATUTES (COUNTS I & II)

In Counts I and II, plaintiffs claim that by secretly installing surveillance equipment in

the VA Medical Center, Chief Brown and Director Hawkins violated the federal wiretapping

---

[6] Rule 56(d) provides:

> When Facts Are Unavailable to the Nonmovant.  If a nonmovant shows by
> affidavit or declaration that, for specified reasons, it cannot present facts essential
> to justify its opposition, the court may:(1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue
> any other appropriate order.

Fed. R. Civ. P. 56(d).

statute, *see* 18 U.S.C. § § 2510 *et seq*., and the District of Columbia's wiretapping law, *see* D.C. Code § 23-542(b).[7]  Defendants argue that Counts I and II are not viable claims  because neither statute applies to video surveillance and it is undisputed that no audio surveillance ever took place.[8]  Plaintiffs appear to concede that neither statute applies to video surveillance, but they contend that they should be allowed to pursue Counts I and II because it is a disputed fact whether audio surveillance occurred, especially given that plaintiffs have not yet had the opportunity to take discovery.   The Court agrees.

Defendants rely on the following evidence to argue that it is undisputed that no audio surveillance took place: (1) Chief Brown's statement in his declaration that: "There was no request for audio surveillance or audio recording; *nor to my knowledge* was audio surveillance or audio recording approved or conducted at the VA Medical Center."  (Brown Decl. ¶ 10 (emphasis added)); (2) an October 23, 2013 memorandum from Chief Brown to Director Hawkins seeking authorization to install two *video* recording devices (*see* Brown Decl. Ex. A (emphasis added)); (3) Director Hawkins' negative response to the question "[w]as there any

---

[7] In Count I, plaintiffs allege that Chief Brown, Director Hawkins, and JCI "jointly conspired to install video and audio surveillance equipment to secretly record conversations and conduct at the Medical Center," that Chief Brown "used that recorded information to discipline, terminate and terrorize employees at the Medical Center," and that "[d]efendants' actions were not justified by any Court, or law enforcement agent and do not conform to any of the exceptions provided by 18 U.S.C. § 2511(2)."  (Compl. ¶¶ 76-78.)

In Count II, plaintiffs allege that Chief Brown, Director Hawkins, and JCI "willfully intercepted oral communications between employees at the Veterans Affairs Medical Center," that their actions "were not legally justified and do not establish any of the exceptions as set out in D.C. Code § 23-542(b)," and that Chief Brown "utilized the unlawfully intercepted oral communications to discipline, terminate, and terrorize employees at the Medical Center." (Compl. ¶¶ 80-82.)

[8] Defendants concede that both statutes apply to audio surveillance.  (*See* Defs.' Mot. at 12 ("'Both statutes create a private right of action of any person whose communications have been unlawfully intercepted, used or disclosed.'" (quoting *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F.Supp. 2d 311, 328 (D.D.C. 2011))).)

audio involved in the recordings" that he "[d]id not authorize any audio" (Hawkins Tr. at 14); (4)

JCI employee Bradford's testimony that although he did not participate in the actual installation

of any devices,  he was there when the installing technician "tied back the audio cables and taped

them" and that the technician "told him" that he never connected the audio (Bradford Tr. at 8);

(5) Associate Director Matthews' testimony about the surveillance device in the Control Room

that "to [his] knowledge, it did not have audio" (Matthews Tr. at 6); and (6) defendants'

counsel's declaration  that he had the Office of the AUSA purchase a camera bearing the

description "MiNi CCD" camera that he believed was similar to the camera pictured in plaintiffs'

exhibits, and that he tested the camera and discovered that the red LED light was lit when the

power was on even when the audio and video feeds were not connected (Nebeker Decl. ¶¶ 2-3,

7-8).

        The declarations submitted by plaintiffs to respond to defendants' evidence state that

several officers saw a microphone attached to the camera in the Control Room, that the

microphone was installed at a height that corresponded to where people would be having

conversations, and that the LED lights on the device were lit.  (*See* Rego Decl. ¶¶ 3-7 & Ex. 1;

Boozer Decl. ¶¶ 3-4; Jeter Decl. ¶¶ 3-7; Holder Decl. ¶¶ 3-4; Allen Decl. ¶¶ 4-7; Rodriguez-Soto

Decl. ¶¶ 3-5; Smallwood Decl. ¶¶ 3-6; Starleper Decl. ¶¶ 3-6; Singleton Decl. ¶¶ 3-6.)  Plaintiffs'

declarations also describe one occasion when officers in the Control Room were talking about

the camera and microphone they had found and then, after the officers covered up the

microphone, "Chief Brown stormed into the room and started berating [the officers] about being

near his camera and microphone" and then demanded that the officers prepare statements as to

why they were in that area.  (*See* Holder Decl. ¶¶ 5-6; Starleper Decl. ¶ 7; Allen Decl. ¶¶ 16-17.)

On another occasion, an officer was in the Control Room "venting about having leave denied,"

and then five minutes later the Deputy Chief called the officer in and referenced his

conversation.  (Singleton Decl. ¶¶ 8-9.)

Considering the above evidence, and drawing all inferences in plaintiffs' favor, as the

Court must for purposes of ruling on defendants' motion for summary judgment, the Court

concludes that existing record is not sufficiently clear at this juncture to accept as undisputed the

fact that no audio surveillance took place.  Moreover, plaintiffs' counsel has filed a declaration

pursuant to Rule 56(d), stating that plaintiffs request document discovery and depositions in

order to ensure that they have access to any evidence that might controvert Chief Brown's

declaration and the other evidence relied upon by defendants.  (Rule 56 Decl. ¶¶ 3, 8-9.)  This is

a valid request, for courts are generally loath to award summary judgment before the non-

moving party has been given an adequate opportunity for discovery, *see Swierkiewicz v. Sorema

N. A.*, 534 U.S. 506, 512 (2002); *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir.

1995), and there is nothing in this case that warrants an exception to this general rule.  The

strongest evidence for defendants is a declaration from Chief Brown, who is a defendant in this

case.  Plaintiffs should not have to accept the statements in his declaration at face value without

having the opportunity to conduct document discovery and to depose him and others with

potentially relevant information.  For these reasons, the Court will deny without prejudice

defendants' motion for summary judgment on Counts I and II.

## II.   CIVIL CONSPIRACY (COUNT III)

In Count III, plaintiffs allege that the actions of Chief Brown and Director Hawkins, in

conjunction with JCI, render them liable for civil conspiracy.  Specifically, plaintiffs claim that

Chief Brown, Director Hawkins, and JCI entered into and carried out a conspiracy to illegally

install hidden cameras and microphones in the Medical Center and that Chief Brown monitored

and utilized the data collected from those devices against employees of the Medical Center.

(Compl. ¶¶ 83-88.)  Defendants argue that the civil conspiracy count should be dismissed for

failure to state a claim, because "if this Court finds, as is likely, that there are no underlying

predicate counts, then the conspiracy count must similarly be dismissed."  (Defs.' Mot. at 14.)

Defendants are correct that "under both federal and District of Columbia law, civil conspiracy is

not actionable in and of itself."  *See Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493

(D.C. Cir. 1989).  Rather, there must be an underlying predicate offense.  However, as explained

*supra*, the Court has rejected defendants' challenges to Counts I and II, the underlying predicate

offenses for Count III.  Accordingly, defendants' argument for the dismissal of Count III must

must also be rejected.

## III.    FOURTH AMENDMENT (COUNT IV)

In Count IV, plaintiffs claim that Chief Brown's actions violated their Fourth

Amendment right to be free from unreasonable searches and seizures and that under the Supreme

Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,

403 U.S. 388 (1971), he is personally liable for damages.  *Bivens* established that federal

officials can be sued in their individual capacities for actions taken under the color of law that

violate the Fourth Amendment, but the doctrine of qualified immunity protects government

officials from liability "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982).  In the present case, defendants contend that they are entitled to

summary judgment on plaintiffs' claim against Chief Brown either (1) because the surveillance

did not violate the Fourth Amendment, or (2) even if it did, the right was not clearly established

at the time the surveillance occurred.  Given the incompleteness of the existing record, the Court

finds it impossible at this time to agree with either of defendants' arguments.

The Fourth Amendment's protection "against unreasonable searches and seizures"

"applies . . . when the government acts in its capacity as an employer."  *City of Ontario v. Quon*,

560 U.S. 746, 756 (2010); *see O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) ("[i]ndividuals do

not lose Fourth Amendment rights merely because they work for the government instead of a

private employer.").  However, where the government as employer conducts a search or seizure

for "noninvestigatory, work-related purposes" or for "investigations of work-related

misconduct," the standard for determining whether that search or seizure is reasonable (which

was adopted by a plurality of the Supreme Court in *O'Connor v. Ortega* and has generally been

followed by most lower courts, including the D.C. Circuit, *see Stewart v. Evans*, 351 F.3d 1239,

1243 (D.C. Cir. 2003)) asks two questions.  *See O'Connor*, 480 U.S. at 717-724.  The first

question is whether, considering the "operational realities of the workplace" "on a case-by-case

basis," the employee has a "reasonable expectation of privacy" in the intruded-upon space.  *Id*. at

717-18.  If the answer to that question is yes, Fourth Amendment protections apply, and courts

proceed to the question of whether the employer's intrusion was "reasonable[] under all the

circumstances."  *O'Connor*, 480 U.S. at 725-26; *see also City of Ontario*, 560 U.S. at 756-57.

"Under this reasonableness standard, both the inception and the scope of the intrusion must be

reasonable."  *O'Connor*, 480 U.S. at 726.

To support their argument that there was no Fourth Amendment violation, defendants

rely primarily on a twenty-year old decision from a federal district court in Kansas.  *See*

*Thompson v. Johnson County Community College*, 930 F. Supp. 501 (D. Kan. 1996).  In

*Thompson*, the plaintiffs were community college security officers who challenged the

10

warrantless installation of video surveillance equipment in the security personnel locker area. The surveillance took place in the "security personnel locker area," an area that "was not enclosed," and that "was part of a storage room that also housed the College's heating and air conditioning equipment." *Id*. at 507.  In this area, "[p]laintiffs' activities could be viewed by anyone walking into or through the storage room/security personnel locker area," the area was not "reserved for [the plaintiffs] exclusive use," and "other college personnel also had regular access to this area." *Id*.  Based on these facts and applying the approach adopted by the plurality in *O'Connor*, the court granted summary judgment for the defendants, finding that (1) the officers had no reasonable expectation of privacy in the locker area, and (2) even if they did, the video surveillance conducted by the defendants to investigate reports of employee misconduct was reasonable in both inception and scope.  Defendants contend, without further elaboration, that the facts in *Thompson* are "similar to the circumstances at issue in the instant action" and that, following *Thompson*, the Court should grant Chief Brown summary judgment on plaintiffs' *Bivens* claim.  (Defs.' Mot. at 17-19.)

Although the facts in *Thompson* bear some similarities to the present case, defendants' reliance on *Thompson* ignores critical differences.  First and most importantly, the factual record in *Thompson* was fully developed, whereas the factual record here case is not.  Second, the allegations of the complaint suggest that aspects of the surveillance at the VA Medical Center were different from those in *Thompson*.  However, even if the facts turn out to be similar, the decision in *Thompson* is not controlling precedent for this Court, and other courts have analyzed similar situations differently.  *See, e.g.*, *Jones v. Houston Community College Sys.*, 816 F. Supp. 2d 418 (S.D. Tex. 2011) (community college security officers challenging video surveillance in office stated Fourth Amendment claim); *Richards v. County of Los Angeles*, 775 F. Supp. 2d

1176, 1182- (C.D. Cal. 2011) (covert videotaping of county employees in dispatch room violated Fourth Amendment); *Rosario v. United States*, 538 F. Supp. 2d 480, 495-500 (D.P.R. 2008) (federal police officers had reasonable expectation of privacy from video surveillance in VA locker-break room and stated claim that search was unreasonable); *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1101-09 (C.D. Cal. 2006) (police officers who were secretly videotaped in locker room had reasonable expectation of privacy and search was not reasonable).

For now, though, the Court will not speculate as to where the ultimate facts of this case will lead. As our Court of Appeals has made clear, "the inquiry into reasonableness must be made on a case-by-case basis," and it must be based upon an adequate record. *Stewart v. Evans*, 275 F.3d 1126, 1130-31 (D.C. Cir. 2002) (reversing dismissal and remanding because "[w]ithout knowing more about the circumstances surrounding the search, a court simply cannot assess whether it was reasonable"); *see also O'Connor*, 480 U.S. at 727 (remanding because "the record was inadequate for a determination on motion for summary judgment of the reasonableness of the search and seizure"). It is not apparent from the existing record, viewed in the light most favorable to plaintiffs, that the undisputed facts establish either that plaintiffs lacked a reasonable expectation of privacy in their conversations or their actions in the rooms where the surveillance allegedly occurred or that, if they had a reasonable expectation of privacy, the search was reasonable in both its inception and its scope. Given that plaintiffs have not yet had the opportunity to take discovery, and considering the disputed facts viewed in the light most favorable to the plaintiffs, the Court cannot find that defendants' surveillance did not violate the Fourth Amendment.

For the same reason, it is premature at this juncture to conclude that Chief Brown is protected from liability by the doctrine of qualified immunity. For a right to be "clearly

established," the "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  This does not mean that "a case directly on point' is required.  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011).  Rather, an official "can still be on notice that [his] conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  Here, where the Court has concluded that the record is inadequate to conclude that plaintiffs' constitutional rights were not violated, it is also inadequate to assess whether defendant violated a right that was clearly established at the time of the challenged conduct.  *See Stewart v. Evans*, 275 F.3d 1126, 1130-31 (D.C. Cir. 2002) (declining to dismiss on the ground of qualified immunity where record was inadequate to assess whether plaintiff lacked a reasonable expectation of privacy in the area searched).  Accordingly, the Court will deny without prejudice defendants' motion for summary judgment on Count IV.

## IV.    FTCA (COUNT V)

In Count V, plaintiffs claim that the Department of Veterans Affairs, sued through Secretary McDonald in his official capacity as VA Secretary, is liable for damages under the FTCA for Chief Brown's installation of hidden cameras and microphones.  (*See* Compl. ¶¶ 96-98.)  Defendants move to dismiss Count V on the ground that the United States is the only proper party defendant in actions brought under the FTCA.  As plaintiffs concede in their opposition (*see* Pls.' Resp. at 4 n.1), defendants are correct that Count V should have been filed against the United States as the FTCA does not authorize suits against federal officials or federal agencies. *See* 28 U.S.C. § 2679; *see also Kissi v. Simmons*, No. 09-cv-1377, 2009 WL 3429567, at *1

(D.D.C. Oct. 22, 2009) ("the proper defendant to an action under the FTCA is the United States

of America"); *Cox v. Sec'y of Labor,* 739 F. Supp. 28, 29 (D.D.C.1990) (dismissing FTCA claim

against Secretary of Labor in her official capacity for lack of subject matter jurisdiction).

Plaintiffs have not, however, filed a motion seeking leave to amend Count V.  In addition,

defendants have submitted uncontroverted evidence that any such amendment would be futile

because plaintiffs have failed to exhaust their administrative remedies,[9] a jurisdictional

requirement that must be satisfied before bringing suit under the FTCA.  *See* 28 U.S.C. §

2675(a)[10]; 28 C.F.R. § 14.2.[11]  Accordingly, Count V will be dismissed.

---

[9] Defendants have submitted declarations from the VA's Assistant General Counsel and the
VA's Regional Counsel in this region, both stating that a search was conducted of all available
records and that no administrative FTCA claims filed by plaintiffs were discovered.  (*See*
Bradshaw Decl. ¶ 5 ("A search of VA records was conducted.  Numerous cases involving the
named plaintiffs were discovered, but all such cases involved either Equal Employment
Opportunity Commission complaints or adverse administrative action complaints.  None of the
filing in these cases can be construed as complying with the minimal tort claim requirements of
28 C.F.R. § 14.2 In particular, none of the filings contained a demand for a sum certain.");
Giorno Decl. ¶ 3 ("I conducted a search of all available VA records of administrative tort claims
submitted for adjudication maintained locally for evidence of an administrative claim filed by the
above-name plaintiff.  No such claim was discovered.").)

[10] 28 U.S.C. § 2675(a) states:

> An action shall not be instituted upon a claim against the United States for money
> damages for injury or loss of property or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the Government while
> acting within the scope of his office or employment, unless the claimant shall
> have first presented the claim to the appropriate Federal agency and his claim
> shall have been finally denied by the agency in writing and sent by certified or
> registered mail. The failure of an agency to make final disposition of a claim
> within six months after it is filed shall, at the option of the claimant any time
> thereafter, be deemed a final denial of the claim for purposes of this section.

[11] 28 C.F.R. § 14.2(a) states:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim
> shall be deemed to have been presented when a Federal agency receives from a
> claimant, his duly authorized agent or legal representative, an executed Standard
> Form 95 or other written notification of an incident, accompanied by a claim for
> money damages in a sum certain for injury to or loss of property, personal injury,
> or death alleged to have occurred by reason of the incident; and the title or legal

**CONCLUSION**

Accordingly, and for the reasons stated above, defendants' motion to dismiss or for summary judgment will be granted in part and denied in part.  A separate Order accompanies this Memorandum Opinion.


/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge


Date:   May 6, 2016

---

capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.